## Solomon Zents and Catharine A. Zents, His Wife, Plffs. in Err., v. William F. Shaner To Use of Levi Shaner.

A married woman, her husband joining, contracted with a third party to purchase certain real estate from him at a stipulated sum, without any provision as to how deferred payments should be secured; on coming to take possession, vendee (the wife) offered vendor her judgment note for the balance of purchase money unpaid. Vendor refused the note and demanded a mortgage upon certain real estate owned by the wife. The vendee, with knowledge that she had a remedy against the vendor on the contract, and acting in conjunction with her husband, gave the desired mortgage. *Held*, that the facts did not show fraud or coercion on the part of the vendor and, therefore, did not afford a defense to the mortgage.

(Decided October 18, 1886.)

Error to the Common Pleas of Westmoreland County to review a judgment on a verdict directed for plaintiff in an action of sci. fa. sur mortgage. Affirmed.

The facts are set forth in the opinion of the court below, by WHITE, P. J., as follows:

"It seems that Mr. Levi Shaner became the owner of a certain hotel property in Beaver; that he moved into it some time in March, 1877. Sometime after this, he called on Mr. and Mrs. Zents and commenced to negotiate with them for the sale of this property. The result of that was that they came down to Beaver some short time after this, and the negotiations between them were concluded, and ultimated in calling upon S. B. Wilson, Esq., one of the leading attorneys of the Beaver bar, to reduce their contract to writing. That contract is dated on the 14th day of March, 1877, and stipulates for the payment, at different times, of $8,000 for the real estate and for such personal prop-

erty and furniture as Mr. Shaner seems to have put in it.   They
were to remove into the property by the first of April following,
which was within a few days.   In pursuance of this, the Zentses
went home—living on a farm near Parnassus, or a property in
Parnassus, in this county—and commenced to make arrange-
ments to move, by selling their personal property and arranging
for the giving out of their farm.

"The result was that in a short time some of their household
goods and some provisions and groceries were shipped down to
Beaver, accompanied by Mrs. Zents.   After she got there, the
property was moved into the house, Mr. Shaner being there, and
some remarks were made by him then, to her, that her note was
not good, that he wanted a mortgage for the whole of the pur-
chase money, upon her farm.   Some conversation was had be-
tween them, as we recall the testimony, in which she admitted
that she knew the judgment note of a married woman would not
be good, and they had some conversation upon the subject; but
the evidence is that Mr. Shaner refused to conclude the matter
further until Mr. Zents should come down.   He did come down
in a few days and then the matter was broached by Mr. Zents to
Mr. Shaner, Mr. Zents saying:   'I have got $500 to pay you;'
then Mr. Shaner says to him that the judgment note will not be
sufficient, and he wants a mortgage for the purchase money, up-
on Mrs. Zents's property in Westmoreland county.   This results
in some confusion, some dispute between the parties as to that,
Mr. Shaner reiterating the fact that the judgment note, he is in-
formed, is not good, and wants more security.

"Thus the matter rests, he refusing to take the $500, and Mr.
Zents, as he testifies, calls upon an attorney, having made up his
mind about the matter, to sue him upon this contract, which he
would have had a right to do.   He goes down to consult his at-
torney, and, in the meantime, it seems the mortgage was direct-
ed to be executed to W. F. Shaner, a son of the plaintiff here;
and he and his mother and Mrs. Zents appear, from the testi-
mony of Solomon Zents, one of the defendants here, to have come
to the conclusion—they to take a mortgage, and Mrs. Zents to give
a mortgage for $2,273 on the property—and this is the mortgage
in suit.   That mortgage was then drawn up.   They come again,
it seems, to S. B. Wilson, Esq., and the mortgage is prepared,
he saying that his wife wrote the mortgage.   Then a justice of
the peace comes to his office and it is formally acknowledged, as

the testimony shows, the justice of the peace taking the acknowledgment in the regular legal way, as the testimony will indicate. Then the mortgage is given to Levi Shaner, who sends it to the recorder's office here and has it recorded; and the Zentses go into possession of the property, run the hotel, and continue for some time—more than a year. Now, this is the testimony, as developed in this case, so far as we have it. The defendants claim that they are not liable upon this contract; that this mortgage was executed under such circumstances as to relieve the defendant, Mrs. Zents, from her liability on it."

The court directed a verdict for the plaintiff upon which judgment was entered and defendants took this writ, assigning, *inter alia,* as error the action of the court in directing the verdict.

*Moorhead & Head,* for plaintiffs in error.—Cited Louden v. Blythe, 27 Pa. 22, 67 Am. Dec. 442; Michener v. Cavender, 38 Pa. 337, 80 Am. Dec. 486; McCandless v. Engle, 51 Pa. 313; Singer Mfg. Co. v. Rook, 84 Pa. 445, 24 Am. Rep. 204; Cridge v. Hare, 98 Pa. 565.

*Alexander Eicher* and *Wentling & Miller* for defendant in error.

PER CURIAM:

The evidence in this case does not satisfy us that Mrs. Zents was either inveigled by fraud, or coerced by duress, to execute the mortgage in suit. She acted throughout in conjunction with her husband, and under his advice and counsel.

It is true that Shaner, having discovered that his contract with her was worthless, refused to deliver possession of the property until he obtained some security for the purchase money. But in this there was no fraud, neither was there coercion. She had her remedy on the contract, and of this her husband was perfectly aware; but rather than resort to a remedy of this kind, both he and she preferred to accede to Shaner's terms, and, as a consequence of that conclusion, executed the mortgage. The defendants having thus acted in full view of their rights, and with knowledge of all the consequences, it is too late now to recede from their own deliberate act, or to complain of a result that was produced by their own folly.

The judgment is affirmed.